IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


TERRY L. JENKINS

        Plaintiff,

vs.                                        CASE NO. 1:11-cv-23-MP-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's applications for a period of disability and disability insurance benefits and supplemental income benefits pursuant to Title II and XVI of the Social Security Act.  (Doc. 1.)  The Commissioner has answered (Doc. 11), and both parties have filed briefs outlining their respective positions.  (Docs. 16 & 17.)  For the reasons discussed below, it is recommended that the Commissioner's decision be **AFFIRMED.**

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for disability insurance benefits under Title II on October 24, 2003.  (R. 69.)  On February 9, 2004, he filed an application for supplemental security income under Title XVI.  (R. 242-45.)  These applications were denied initially and upon reconsideration.  (R. 32, 40, 246, 251.)  Following a hearing, an administrative law judge (ALJ) issued a decision unfavorable to Plaintiff on

November 2, 2006.  (R. 18-29.)  The Appeals Council denied Plaintiff's request for

review on October 24, 2008 (R. 7-9.)  Plaintiff sought review in this Court, and on April

6, 2010, the Court reversed the ALJ's decision and remanded Plaintiff's case to the

agency for additional proceedings, with specific instructions that the ALJ give Plaintiff's

VA disability decision great weight, unless the ALJ discusses "valid reasons" for not

doing so.  (R. 391-405.); *Jenkins v. Astrue*, Case No. 1:08-cv-251-MP-MD (N.D. Fla,

April 6, 2010).  On October 13, 2010, following a second hearing, the ALJ found Plaintiff

not disabled.  (R. 376-90.)  On February 10, 2011, Plaintiff filed the instant appeal to

this Court.  (Doc. 1.)

## II.  FINDINGS OF THE ALJ

The ALJ determined that Plaintiff had not engaged in substantial gainful activity

since December 9, 2004.  The ALJ found that Plaintiff had the following severe

impairments: mild degenerative disc disease lumbar region, affective disorder,

somatoform disorder, sinus bradycardia, and hypertension, but that he did not have an

impairment or combination of impairments that met or medically equaled one of the

listed impairments.  (R. 378.)

With respect to Plaintiff's residual functional capacity at step four of the

sequential evaluation, the ALJ determined that Plaintiff retained the residual functional

capacity (RFC) to lift and/or carry 20 pounds occasionally and 10 pounds frequently and

to stand, walk, and sit for a total of about 6 hours in an 8-hour workday, with some

postural limitations.  Plaintiff should avoid hazards in the workplace due to pain and

medication side effects.  Plaintiff requires work that is low stress with simple, unskilled

one, two, or three step instructions.  The ALJ noted that Plaintiff's depression affects his ability to concentrate on complex tasks, but he retains the ability to understand, remember, and carry out simple job instructions.  (R. 379-80.)

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce some of Plaintiff's alleged symptoms but that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they conflicted with the ALJ's RFC assessment.  (R. 380.)  The ALJ noted that treatment notes from the Veterans Administration showed that Plaintiff was not reporting severe symptoms regarding problems with sleeping, depression, and anxiety attacks to his physicians and instead had reported improvement in his symptoms.  (R. 386-87.)  The ALJ concluded at step four that Plaintiff was capable of performing his past relevant work as an order filler.  A vocational expert testified that an individual of the same age, education, and residual functional capacity as Plaintiff could perform his past relevant work.  The ALJ thus concluded that Plaintiff had not been under a disability as defined in the Act..

### III.  <u>ISSUES PRESENTED</u>

Plaintiff argues that the ALJ erred: (1) in considering his severe impairments at steps two and four because the ALJ should have found that Plaintiff has a severe psychotic disorder; (2) in not including all of the limitations referenced by Drs. Wise and Zelenka in their psychiatric review techniques in the hypothetical to the vocational expert; and (3) in not giving very great weight to the VA's determination that Plaintiff was unemployable due to disability.  (Doc. 16.)

## IV.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by

---

[1] See 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, he is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 2005 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 ( 11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

## V.  SUMMARY OF THE RECORD

### A.   Medical History

On October 14, 2002, approximately six months prior to Plaintiff's claimed onset date, he was seen by William Benet, Ph.D., a psychologist, for examination.[21]  He reported a history of depression dating back to 1981 along with numbness and tingling in his arms from an automobile accident in 1997 or 1998.  More recently, he had experienced difficulty remembering things.  He had served in the military, and was discharged in 1990 after a tour of duty in Saudi Arabia during the Gulf War.  He did not

---

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

[20] See id.

[21]The undersigned has reviewed the record and has incorporated herein the medical history as described in the March 8, 2010 Report and Recommendation of the Magistrate Judge.  Jenkins v. Astrue, Case No. 1:08-cv-251-MP-MD, Doc. 23 (N.D. Fla. March. 8, 2010).

report any trauma during his military service and did not have a service connected

disability.  On mental status examination he was alert, serious, responsive and

cooperative.  Eye contact was fair.  Motor activity and gait were normal.  His speech

was clear, coherent, relevant and articulate with organized and goal directed thinking.

Short term memory was minimally adequate.  Intermediate memory was poor and his

fund of knowledge was poor.  His general intellectual ability was estimated to be

low/average.  Results of the Wechsler Memory Scale - III Test was within the

low/average to borderline range of memory functioning and the Minnesota Multiphasic

Personality Inventory - II Test disclosed a profile similar to those which exhibit a

schizoid or schizotypal pattern of adjustment with poor reality testing, subtle

communication problems, and impaired empathy.  Dr. Benet concluded that Plaintiff

suffered from chronic depression with schizoid/schizotypal personality maladjustment

and mild impairment and memory functioning.  He would be able to perform work-

related mental activities that require low/average to average understanding and

memory.  (R. 260-65.)  Dr. Benet also filled out a Medical Source Statement of Ability to

do Work-Related Activities (Mental) in which he opined that Plaintiff had moderate

impairments in all relevant functioning areas.  (R. 258-59.)

  The next medical entry is dated July 31, 2003, just over four months after

Plaintiff's claimed onset date.  He was taken to the local VA hospital by ambulance,

complaining of chronic pain over the prior two weeks.  He characterized his pain as 8

out of 10.  A nurse at the hospital noted that while Plaintiff was waiting to be seen by a

physician, he climbed off the end of his bed, walked around, and was able to bend over

the stretcher to get something out of a bag that his family brought, all with no apparent limited motion.  (R. 220.)  Plaintiff was treated conservatively and discharged after four hours.  (R. 219-223.)  Five days later, he was seen by a VA neurologist who felt that Plaintiff suffered from an anxiety disorder.  (Ro. 213-216.)  An x-ray taken on August 31, 2003 disclosed only mild degenerative changes at the L5-S1 level.  (R. 180-181.)

On October 16, 2003, Plaintiff saw a staff psychologist at the VA.  He reported symptoms consistent with dysthymia, somatization, and personality disorders.  He complained of chronic pain in the area of his left neck extending down the length of his spine.  The psychologist noted the earlier entry concerning Plaintiff having arrived by ambulance but being able to move with little difficulty to stretch and reach for an object.  On mental examination, Plaintiff was alert, had adequate personal hygiene, and maintained adequate eye contact.  His mood was moderately dysthymic and anxious, his affect was constricted, moderately sad, moderately anxious and congruent; his speech was normal but he indicated themes of victimization.  He denied hallucinations and evidenced no delusions but he frequently indicated feelings of worthlessness and unexplainable physical symptoms.  The psychologist's diagnosis was chronic pain syndrome, somatization, dysthymia, and personality disorder NOS.  The psychologist recommended that Plaintiff be referred to pain management because his concerns were generally medical in nature.  (R. 211-212.)  Plaintiff returned to the same staff psychologist on November 17, 2003.  The psychologist recorded symptoms of anxiety and dysthymia, along with physical symptoms, and opined that they were suggestive of "somatization of some bona fide physical problems" and that Plaintiff should be seen in

pain management.  (R. 195.)

On February 27, 2004, Plaintiff returned to the VA Emergency Room complaining of numbness in his left finger.  He did not complain of chest pain.  His neurological examination was normal, he was treated conservatively and discharged.  A cervical spine x-ray taken while he was there was read as being normal.  (R. 179, 203-209.)

On April 16, 2004, the VA psychiatrist diagnosed depression and put Plaintiff on Paxil.  A month later, Plaintiff reported that he had experienced some improvements on that medication.  (R. 171-174.)  Plaintiff returned to the VA psychiatrist on June 30, 2004 and again on August 12, 2004.  He reported that a new medication, Rispridone, had been beneficial.  Plaintiff also complained of occasional auditory hallucinations.  Overall he was noted to be alert, pleasant, cooperative and did not appear to be deeply depressed, psychotic, assaultive, or out of emotional control.  (R. 170-171.)  Plaintiff next saw the VA psychiatrist on May 10, 2005.  The doctor noted that Plaintiff had missed four appointments in July through November of that year.  Plaintiff reported that he had moved into his own place which he enjoyed, and that he had been compliant with his treatment program.  (R. 317-320.)

Robert Barnhill, D.C., a chiropractor, treated Plaintiff for neck and back pain on June 23, 2004.  Dr. Barnhill saw Plaintiff for follow up on six more occasions ending on July 30, 2004.  On June 28, 2004, Dr. Barnhill noted in a "return to work" form that Plaintiff was totally disabled.  (R. 154-156.)

Plaintiff was examined by two physicians at the request of the State Division of

Disability Determinations.  Plaintiff saw Lance Chodosh, M.D., a family practitioner, in July 2004.  He presented complaining of heart, neck, and back pain and mental health problems.  He indicated that he had suffered from major depression and schizophrenia since 1996 which were partially controlled.  He said that he would stand for approximately 25 minutes and could sit normally.  He was able to squat but avoided lifting more than 20 pounds.  On general examination he appeared healthy.  There was no deformity, tenderness, or spasm in his neck or back, straight leg raising was normal, and neurologic examination was normal.  His standing balance and gait, including heel and toe walk were normal.  Dr. Chodosh noted an impression of chronic mental illness, hypertension under control, complaints of poor vision but no evidence of eye disease, history of back pain but no physical evidence of significant impairment.  Dr. Chodosh opined that Plaintiff did not have any physical restrictions.  (R. 135-141.)

Plaintiff was evaluated by Andres Nazario, Jr., Ph.D., a psychologist, on July 20, 2004.  Plaintiff gave a history of mental illness with diagnoses of major depression and schizophrenia and of his treatment at the VA Medical Center.  He indicated that he cried and felt anxious often and that he was generally unhappy.  Dr. Nazario conducted a mental status examination and found that Plaintiff was alert and cooperative, his mood was somewhat depressed and his affect was appropriate, he was oriented, and he was able to do the various mental exercises presented.  He was persistent in his approach and his pace appeared adequate.  There was no evidence of hallucinations, delusions, or obsessions or difficulties finding words.  Dr. Nazario indicated that the symptoms described were consistent with a diagnosis of dysthymic disorder, late onset.

Dr. Nazario also opined that Plaintiff did not meet the criteria for a schizophrenic

disorder.  (R. 142-145.)

State agency psychologist Michael H. Zelenka completed a psychiatric review

technique on August 11, 2004.  (R. 160-169.)  Dr. Zelenka noted mild limitations in

activities of daily living and social functioning, with moderate limitations in maintaining

concentration, persistence, or pace.  In his mental RFC, Dr. Zelenka indicated

moderate limitations in understanding and remembering detailed instructions; carrying

out detailed instructions; working in coordination with others without being distracted;

completing a normal workweek and workday without interruptions from psychologically

based symptoms; asking simple questions or requesting assistance; and setting

realistic goals or making plans independently of others.  He noted no significant

limitations in the remaining functional areas.  (R. 167-168.)  Dr. Zelenka concluded that

there was no support for a diagnosis of schizophrenia or posttraumatic stress disorder.

He opined that if Plaintiff was given only simple instructions to carry out, limited public

contact, and the ability to work independently with some allowance for productivity

problems resulting from psychological issues, Plaintiff retained adequate mental ability

to carry out simple instructions and relate adequately in a routine work setting.  (R.

169.)

Dr. Eric Puestow completed a physical RFC assessment on October 7, 2004,

finding that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds,

stand/walk/sit about six hours in a regular work day, and had no limitations with pushing

or pulling.  (R. 224-231.)

Dr. Steven L. Wise, Psy.D., completed a psychiatric review technique on October 14, 2004.  (R. 232-241.)  Dr. Wise found that Plaintiff had mild limitations in activities of daily living and social functioning; moderate limitations in maintaining concentration, persistence, or pace; and 1-2 episodes of decompensation.  (R. 236.)   In his mental RFC, Dr. Wise indicated moderate limitations in understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; working in coordination with others without being distracted; and setting realistic goals or making plans independently of others.  He noted no significant limitations in the remaining functional areas.  (R. 239-240.)  Dr. Wise concluded that Plaintiff's mental issues resulted in reduced concentration and lessened capacity for complex tasks, but he retained the capacity for very simple structured tasks and interacted adequately with others for goal directed tasks.  (R. 241.)

On May 23, 2005, Plaintiff reported for his annual examination and evaluation of chronic pain problems.  He complained of non-specific pains and muscle strain but his physical examination was essentially normal.  On January 3, 2006, Plaintiff was seen at the VA mental health clinic where he reported improved depressive symptoms but prolonged morning grogginess with his risperidone.  Plaintiff reported that he misses appointments because he is frequently out of town visiting friends and relatives.  (R. 300.)  On May 1, 2006, Plaintiff presented at VA mental health to follow up after starting antidepressant medication for occasional sadness and tearfulness.  Plaintiff reported that his depression was improved.  He denied psychotic symptoms and anger or temper problems.  Plaintiff said he slept very well and was no longer bothered by prolonged

morning grogginess after reducing his risperidone to 0.5 mg.  (R. 291.)  Plaintiff was

described by the VA nurse practitioner as in a happy mood with anxious and euthymic

affect, with depression that was stable on celexa.  (R. 293.)  On May 25, 2006, Plaintiff

was noted to be in generally good health while being followed in the health clinic for

depression.  His physical examination was normal.  (R. 287-288.)  On June 9, 2006,

nurse practitioner Ruth L. Browne noted "schizophrenia vs psychotic episode" and that

Plaintiff would continue respiridone and citalapram.  (R. 288.)  On December 12, 2006,

Plaintiff returned to the VA mental health clinic.  It was noted that he had missed

several appointments.  He denied any psychotic symptoms, or medication side effects

and was no longer bothered by prolonged morning grogginess.  (R. 614.)

On January 9, 2008, Plaintiff was seen at the VA reporting a relapse of

symptoms after discontinuing his medications.  He was again suffering from

hallucinations, anxiety, and depression.  He resumed medications.  (R. 600-601.)

Plaintiff returned to the VA on February 21, 2008 for a psychiatric assessment.  He

reported doing well since resuming his psych medications, denied any side effects, and

reported that when he did not take his medications he had visual and auditory

hallucinations.  Psychiatric nurse practitioner Joanne T. Donnell recommended

psychotherapy and continued medication management.  (R. , 592, 600.)  At a March 6,

2008 psychotherapy session, Plaintiff denied hallucinations but reported some

paranoia.  (R. 588.)  Plaintiff had several additional psychotherapy sessions in 2008.

On May 26, 2010, Plaintiff was seen for an initial assessment at the VA mental

health clinic.  He reported being a previous patient of Dr. Cuadros and taking celexa

and risperidone but had been off medications for a year and was having difficulty managing symptoms of his schizophrenia.  Plaintiff was on time and appropriately dressed for his appointment; his thought processes appeared linear and there were no signs of a thought disorder or psychosis.  (R. 660.)  Plaintiff reported having visual and auditory hallucinations while off his medications, and though he recognized these were not logical thoughts, he had difficulty managing them without medication.  (R. 661.) Plaintiff re-started his medications.  (R. 664.)

Plaintiff saw Dr. Carlos Cuadros on August 19, 2010, and reported occasional auditory hallucinations, paranoia, and rare visual hallucinations, as well as depression. Dr. Cuadros continued Plaintiff on his medication regimen of risperidone 2 mg and celexa 20 mg.  Plaintiff reported no side effects.  (R. 658.)

**B.    <u>Hearing Testimony</u>**

Plaintiff was 50 years old at the time of the September 17, 2010 hearing.  He testified that he completed twelfth grade.  Plaintiff testified that he cannot work due to chronic back and shoulder pain.  (R. 681-682.)  He experiences pain 3-4 times a week and it is at a 6 or7 out of scale of 10.  Plaintiff testified that he receives treatment for pain at the VA Medical Center about three times per year.  He receives pain medication and physical therapy.  (R. 682.)   Plaintiff testified that in 2003 he fell into a heavy depression with symptoms such as crying, hallucination, and hearing noises.  He still has these symptoms, and cries 1-2 times per month, has hallucinations twice a week, and hears noises once a week.  Plaintiff complained of memory loss and forgetfulness. He testified that when he was working if he was assigned to do something he would

have to write it down so he wouldn't forget.  He had previously gotten in trouble for forgetting things, and it happened maybe twice a month.  (R. 683-684.)   Plaintiff testified that he loses concentration once or twice a month.  In 2002, Plaintiff was working part-time in an office but his attendance was not good.  Plaintiff testified that trying to get to work and the pressure of being a telephone customer service representative was difficult.  (R. 684.)

When Plaintiff was awarded benefits by the VA in 2004, he war treating with Dr. Quadros for schizophrenia and major depression.  (R. 684-685.)  Plaintiff still treats with Dr. Quadros and is prescribed Risperdal and Klonopin (or something similar), which he takes as prescribed.  Plaintiff complained of medication side effects such as speech impairment, sleeping during the day, drowsiness, and sweating.  (R. 685.)  He has the drowsy feeling all day and is in a "sleepy, slow mode" where he has no "get up and go."  He spends his evenings cooking, watching television, and possibly looking outside.  (R. 686.)  Plaintiff testified that he received approximately $680 per month for a non-service connected pension from the VA.  (R. 689.)

Vocational expert David Pigue testified at the hearing.  The ALJ posed a hypothetical individual who: can lift and carry 10 pounds, can stand, sit and/or walk for 6 hours in an 8-hour workday, should avoid frequent ascending and descending stairs, should avoid pushing or pulling motions with lower extremities, can push and pull with upper extremities, cannot perform activities requiring bilateral manual dexterity, can occasionally balance, stoop, crouch, kneel, and crawl but not climb, should avoid hazards due to pain and medication side effects, would require work which is low stress

with simple, unskilled, one, two, or three step instructions, had some limitations to his ability to concentrate on detailed tasks but had the ability to understand, remember, and carry out simple job instructions.  The VE testified that the 10-pound lifting restriction would require sedentary work.  Plaintiff's past relevant work as a central supply worker would not be able to be performed with the restrictions.  The VE testified that if the past relevant work as an order filler limited standing and walking to two hours, it would fit in the sedentary range.  (R. 691.)  The VE testified all of Plaintiff's past relevant work would be precluded by the 10-pound lifting restriction, but that a significant number of jobs existed in the state and national economy for an individual with such restrictions (sedentary, unskilled).  The VE said the positions of electronics worker, surveillance system monitor, and call out worker would be consistent with the sedentary restrictions. (R. 693-694.)  The VE testified that if the hypothetical was modified to represent a person who, due to pain and psychotropic medications experienced drowsiness and sleepiness for 4-5 hours during the day with marked impairments in concentration or persistence in pace, his answer would change because the individual would not be able to engage in the full-time competitive standard of being on task for an 8-hour work day, 5 days a week.  (R. 694.)

## VI.  DISCUSSION

Plaintiff argues that the ALJ erred in not finding Plaintiff has a severe psychotic disorder, not including all of the limitations referenced by the state agency psychiatric reviews, and not giving very great weight to the VA's determination that Plaintiff was unemployable due to disability.  (Doc. 16.)

**A.     The ALJ properly considered the effects of Plaintiff's severe mental impairments**

Plaintiff argues that the ALJ erred by not finding at step two that Plaintiff suffered from schizophrenia as a severe impairment and that as such, the mental RFC determined by the ALJ at step four is not supported by substantial evidence.

The ALJ found at step two that Plaintiff had the following severe mental impairments: affective disorder and somatoform disorder.  (R. 378.)  Substantial evidence supports the ALJ's decision not to include a psychotic disorder at step two.  For example, Dr. Zelenka concluded that there was no support for a diagnosis of schizophrenia or posttraumatic stress disorder.  (R. 169.)  Dr. Nazario, who examined Plaintiff, opined that he "does not meet the criteria for a schizophrenic disorder."  (R. 145.)  The ALJ assigned great weight to the opinions of each of these physicians.  Progress notes from the VA mental health clinic consistently demonstrate that Plaintiff was not experiencing psychotic symptoms, was doing well on his medications, and managed to do so despite missing several appointments in 2005 while traveling out of town to visit friends and relatives.  (R.  300, 302-03, 304.)

However, even if the ALJ erred at step two, substantial evidence still supports his finding that Plaintiff retained the mental RFC to perform work that is low stress with simple, unskilled one, two, or three step instructions and to understand, remember, and carry out simple job instructions.  The ALJ considered all of Plaintiff's relevant medical treatment.  The medical evidence included records that contained diagnosis of a psychotic disorder.  (R. 314, 286-88, 382, 292, 293, 331, 337.)  The ALJ also considered other evidence of Plaintiff's functional limitations, such as his self-reported

ability to take public transportation, handle money, prepare simple meals, clean, and care for his own personal needs.  (R. 113-116.)  Plaintiff told Dr. Nazario that he could shop for groceries, clean, and wash dishes; he also routinely watched television and interacted with family members.  (R. 142-145.)  Plaintiff, with effective medication, reported to the VA that he was walking, sometimes jogging, for exercise and frequently left town to visit friends and relatives.  (R. 300, 302-03, 304.)

  With regard to Plaintiff's argument that the ALJ should have included more limitations as described in the summary conclusion sections of Drs. Zelenka and Wise's PRT forms in the hypothetical to the VE, this is essentially an attack on the mental RFC, which, as is discussed above, is supported by substantial evidence.  As the Commissioner points out, the summary conclusions in the PRT forms which Plaintiff references are "<u>merely a worksheet</u>" and do "<u>not constitute the RFC assessment</u>" and serve as a worksheet for the expert.  (Doc. 17, p. 9) (quoting *Programs Operations Manual (POMS)*, DI 24510.060B.2 (emphasis in original)).  The ALJ considered the RFCs given by Drs. Zelenka and Wise; afforded great weight to each of their opinions; and relied on their opinions in formulated Plaintiff's RFC.

  The ALJ adequately considered the effects of Plaintiff's mental impairments in determining his RFC and used this RFC in the hypothetical question posed to the VE. The Court concludes that the ALJ's assessment of Plaintiff's residual functional capacity is supported by substantial evidence.

**B.      Substantial evidence supports the ALJ's decision to give the VA disability decision little weight**

The ALJ assigned little weight to the VA's decision to award Plaintiff non-service connected benefits and designate him as unemployable.  Plaintiff contends that the ALJ should have assigned very great weight to this decision.  While decisions of other agencies are not binding, the Commissioner must give decisions by other agencies–such as the VA–great weight.[22]  If an ALJ determines that a VA disability decision is not entitled to great weight, he should discuss his reasons for doing so.

In his decision, the ALJ assigned little weight to the VA's determination that Plaintiff was "unable to secure and follow a substantially gainful occupation due to disability" and noted that his disability was caused by chronic pain syndrome, somatization disorder, and hypertension.  (R. 272.)  The ALJ found that "the decision yielded scant clues" as to how the VA's determination was made and that little weight was due because of the different criteria used by the VA and the SSA in assessing disability.  (R. 387.)  Specifically, the ALJ explained that an individual's impairment could be considered disabling for the VA but not for the SSA–thus a claimant would have to satisfy more stringent criteria to be considered disabled under the SSA.  The ALJ also gave more weight to the state agency opinions because they use the same criteria for determining disability as the ALJ.  (R. 389.)

---

[22] *Bloodsworth v. Heckler,* 703 F. 2d 1233, 1241 (11th Cir. 1983); *Brady v. Heckler,* 724 F. 2d 914, 921 (11th Cir. 1984) ("Although the V.A.'s disability rating is not binding on the Secretary of Health and Human Services, it is evidence that should be given great weight.") (quoting *Olson v. Schweiker,* 663 F. 2d 593, 597 n. 4 (5th Cir. 1981)).  Decisions of the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard,* 661 F. 2d 1206, 1207 (11th Cir. 1981) (en banc).

Where, as here, an ALJ considers the VA rating in his decision but discounts the decision because the claimant had to satisfy a more stringent standard to be found disabled than the standard under the Social Security Act, courts have concluded that the ALJ has not committed error. *Pearson v. Astrue,* 271 Fed. Appx. 979, 980 (11th Cir. 2008)("The record establishes that the [ALJ] considered the [VA] rating in his decision and correctly explained that a claimant had to satisfy a more stringent standard to be found disabled under the Social Security Act.") (unpublished)[23] (citing 42 U.SC. §§ 423(d)(2)(A), 1382c(a)(3)(B)).

That is what the ALJ did here. The ALJ concluded that, although Plaintiff received a total disability rating by the VA, he did not qualify for Social Security benefits. In support of this determination the ALJ first noted that the VA's decision fails to provide any evidence or even "clues" as to how the decision was made. Second, the ALJ highlighted the substantial differences in the criteria used by the VA in making disability evaluations as compared to disability decisions under the Social Security Act. These differences include: (1) substantial differences in the definition of "unemployability" for VA decisions[24] compared to disability under the Social Security Act;[25] (2) material differences between VA disability and Social Security disability regarding the amount of money an individual can still earn and be considered disabled;[26] and (3) VA disability

---

[23] Although unpublished opinions are not binding on this Court, they are persuasive authority.  11th Cir. R. 36-2.

[24] 38 C.F.R. § 4.17(a)

[25] 20 C.F.R. § 404.1505(a)(disability is the inability to do any substantial gainful activity).

[26] For example, under VA disability the fact that a claimant earned up to half of the usual remuneration is not a bar to being disabled so long as the restriction to securing employment relates to the disability. 38 C.F.R. § 4.17(a). In contrast, under the Social Security regulations a person is not disabled if he engages in substantial gainful activity. Substantial gainful activity is defined by dollar limits for each

recognizes partial disability while there is no comparable concept for Social Security disability. Thus, the ALJ appropriately relied more heavily upon the opinions of state agency physicians, who utilized the criteria for determining disability under the Social Security regulations.

 In addition to highlighting the material differences between the criteria for VA disability as contrasted to Social Security disability, the ALJ thoroughly considered and discussed the disabling impairments identified by the VA in determining Plaintiff's RFC and in concluding that Plaintiff's functional limitations did not render him disabled under the SSA.

Accordingly, for these reasons, the Court concludes that the ALJ did not err in determining that the VA's disability determination in this case should be accorded less weight than the opinions of the reviewing doctors, who utilized the criteria for determining disability under the Social Security Act.

**C.    The ALJ's finding that Plaintiff could perform past relevant work is supported by substantial evidence**

After determining Plaintiff's RFC in light of his limitations, medical evidence, and credibility, the ALJ included these limitations in a hypothetical question to a VE.  While the ALJ is not required to obtain an opinion from a VE to determine whether the claimant can perform past relevant work the ALJ may do so where the opinions of the VE inform the ALJ as to the requirements for past relevant work as generally performed in the national economy. The VE confirmed that Plaintiff could perform past relevant

---

year and are based on a national dollar limit. *See,* 20 C.F.R. § 404.1574. Thus, a claimant who makes less than one half of the claimant's remuneration from a job can be considered disabled by the VA while the amount of the remuneration for Social Security disability purposes could be high enough to constitute substantial gainful activity thus precluding a finding of disability.

work as an order filler, as that work is generally defined in the national economy.  For the reasons discussed above, the ALJ's RFC was supported by substantial evidence and because the RFC was included in the hypothetical the opinion of the VE constitutes substantial evidence.  Accordingly, the Court concludes that the ALJ did not err at step four in finding that Plaintiff was not disabled because Plaintiff could perform past relevant work as that work is generally performed in the national economy.

Additionally, the ALJ went on and posed the same hypothetical to the VE, except the hypothetical included a lifting and carrying limitation of 10 pounds. The VE was then asked whether an individual with that RFC could perform other work which exists in significant numbers in the national economy. The VE testified that an individual with those limitations contained in the hypothetical could perform work as an electronics worker, surveillance monitor and a call/out operator, each of which existed in significant numbers in the local and national economies. While the ALJ was not required to make a finding at step five of the sequential analysis because he found at step four that Plaintiff could perform past relevant work as that work is generally performed in the national economy, the testimony of the VE fully supports the conclusion at step five that the Plaintiff is not disabled, had the ALJ proceeded to step five. And as discussed above because the ALJ's RFC determination is supported by and is consistent with the substantial evidence, testimony from the VE at step five also would constitute substantial evidence supporting a conclusion at step five that Plaintiff is not disabled.

## VII.  <u>RECOMMENDATION</u>

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of

the Commissioner should be **AFFIRMED**.

      **IN CHAMBERS** in Gainesville, Florida, on the 8th day of February 2012.

*s / Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

      **Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**